MARGARET G. RUGGLES, executrix in *scire facias*,

*vs.*

GEORGE S. BERRY and SAMUEL D. WYMAN.

Knox. Opinion June 4, 1884.

*Bail. R. S., c. 85 § 1.*

Where the creditor takes judgment for a sum as debt or damage in excess of the *ad damnum* in his writ, and attempts to hold the bail therefor, by giving them notice on an execution embracing such excess, the sureties on the bail bond are discharged,

In an action of *scire facias* against the sureties on a bail bond, it did not appear to the court that the bond was returned with the writ, and that the clerk made a note on the writ, that a bail bond had been so filed, as required by R. S., 1871, c. 85, § 1, *Held*, by WALTON, BARROWS and DANFORTH, JJ., that the sureties on the bail bond were thereby discharged.

ON REPORT.

This was an action of *scire facias* by the executrix of the last will of John Ruggles, against the sureties on a bail bond given in a civil action brought by John Ruggles in his lifetime against Moses Call. That writ was dated September 12, 1873.

It commanded the officer to attach property to the amount of two thousand dollars and the *ad damnum* was placed at twelve hundred dollars. Judgment was rendered January 2, 1882, (rescript from law court received February 9, 1882,) for one thousand three hundred eighty-one dollars and seventy cents, as debt or damage, and two hundred six dollars and seventeen cents costs of suit. Execution issued on that judgment, March 10, 1882, the names of the bail were not minuted upon it, but the defendant Berry was notified by the officer holding the execution, June 10, 1882. An *alias* execution issued on the same judgment July 14, 1882, the names of the bail were minuted upon that execution and they were notified by the officer September 23, 1882. The report provided, "the law court to render such judgment as the legal rights of the parties may require; and it is agreed by the parties that either party may move an amendment of the report, and if the amendment would affect the legal rights of the parties, the law court shall allow the same or discharge the report, and order the action to stand for trial in the court below."

Other material facts stated in the opinion.

*A. P. Gould*, for the plaintiff, contended that it was competent to notify the bail on an *alias* execution. Their liability continued for one year.

It was not necessary that a note should be made by the clerk that a bail bond had been filed, nor that any record of that fact should be made, nor that the names of the bail be entered on the execution. The statute is directory merely, and is intended for the benefit of the plaintiff, that his officer may more readily learn upon whom to serve notice. Sureties on the bond are not harmed by the neglect. They would hardly have ground of complaint if the officer did not find them at all. *Mahurin* v. *Brackett*, 5 N. H. 9; *Bean* v. *Parker*, 17 Mass. 591; *Crane* v. *Keating*, 13 Pick. 339.

The counsel further contended that the bail were not discharged. The bond was for $4000. The writ commanded the officer to attach property to the value of two thousand dollars; it contained two counts each of which stated that the defendant was indebted to

the plaintiff in the sum of one thousand dollars "on the day of the date of the writ." The auditor's report stated the balance due from the defendant to the plaintiff "at the date of the writ, nine hundred three dollars and thirty-five cents." The verdict was for that sum. The judgment was for the amount of the verdict with interest to the date of judgment. That made one hundred eighty-one dollars and seventy cents more than the *ad damnum*, but the increase was only for interest given as damages for the detention of the payment of the sum alleged to be due and found to be due at the date of the writ. Such a judgment is valid until reversed for error. *Smith* v. *Keen*, 26 Maine, 411.

But the judgment was not greater than the *ad damnum* as a whole. "To the damage . . . one thousand two hundred dollars which shall then and there be made to appear *with other due damages.*"

Has the last clause no meaning? It did not appear in writs issued by courts of Massachusetts till 1698.

See Acts and Res. of the Province of Mass. Bay, vol. 1, pp. 82, 317. (ed. 1869) ; 1 Chit. Pl. (8th ed.) 419 ; 1 Wheaton's Selwyn's N. P. (5th Am. ed.) 585 ; *Allen* v. *Hunt*, 3 Zabr. 376.

Counsel further contended that where the cause of action is set out in the writ, and by accident the *ad damnum* is too small the court would readily allow an increase of the same ; and if the judgment is taken for no more than the amount attached, neither bail nor subsequent attaching creditors are harmed thereby. The same is true if judgment is taken for a larger sum than the *ad damnum*, but less than the attachment,

See *Seeley* v. *Brown*, 14 Pick. 177 ; *Morse* v. *Sleeper*, 58 Maine, 329 ; *Laighton* v. *Lord*, 28 N. H. 237 ; *McLellan* v. *Crofton*, 6 Maine, 328 ; *Ball* v. *Claflin*, 5 Pick. 303 ; *Miller* v. *Clark*, 8 Pick. 412 ; *Merrill* v. *Curtis*, 57 Maine, 152 ; 2 Saunders, 60 a, note, (3) ; 1 H. Black, 76 ; *Mitchell* v. *Gibson*, 1 H. Black, 233 ; *Hefford* v. *Alger*, 1 Taunton, 218 ; 8 Durn. and East, 28 ; 7 D. and E. 370 ; Cowper, 71 ; 2 Ld. Raym. 1564 ; *Dahl* v. *Johnson*, 1 Bosan. and Pull. 205 ; *Searle* v. *Preston*, 33 Maine, 214 ; *Langley* v. *Adams*, 40 Maine, 125 ; 1 Sutherland, Damages, 759 ; *Putnam* v. *Hall*, 3 Pick. 445 ; *Nash* v. *Whitney*, 39 Maine, 341.

*W. H. Hilton*, for the defendants, cited : *Langley* v. *Adams*, 40 Maine, 125 ; *Bean* v. *Parker*, 17 Mass. 602 ; *Matoon* v. *Eder*, 6 Cal. 57 ; R. S., c. 85, § 1 ; *Hewins* v. *Currier*, 62 Maine, 236 ; *Packard* v. *Brewster*, 59 Maine, 404 ; *Niles* v. *Drake*, 17 Pick. 516 ; *Gale* v. *Boyle*, 6 Cush. 138 ; *Thurston* v. *Prentiss*, 1 Mich. 193 ; *Lang* v. *Scott*, 1 Blackf. (Ind.) 405 ; *Almy* v. *Harris*, 5 John. (N. Y.) 175 ; *Renwick* v. *Morris*, 7 Hill, (N. Y.) 575 ; *Smith* v. *Lockwood*, 13 Barb. 209 ; *Com. of Poor* v. *Gains*, 3 Brev. (S. C.) 396 ; *Banks* v. *Darden*, 18 Ga. 318 ; *Laverty* v. *Chamberlain*, 7 Blackf. (Ind.) 556 ; *Ham* v. *The Hamburg*, 2 Iowa, 460 ; *Manning* v. *Merritt*, 1 Clark, (N. Y.) 98 ; *Low* v. *Dunham*, 61 Maine, 566 ; *Stine* v. *Franklin Co.* 48 Mo. 167 ; *State* v. *Saline Co.* 48 Mo. 390 ; *Phelps* v. *Hawley*, 3 Lans. (N. Y.) 160 ; *State* v. *Buffalo*, 6 Neb. 454 ; *Est. of Ballentine*, 45 Cal. 696 ; *Morse* v. *Sleeper*, 58 Maine, 329 ; *Hyer* v. *Smith*, 3 Cranch, C. C. 437 ; *Robeson* v. *Thompson*, 9 N. J. L. 97.

BARROWS, J.   There are two objections to the maintenance of this process against the defendants as bail for Moses Call, in the suit originally brought by the plaintiff's testator against him,— either of which we think must be regarded as fatal.

I. It is incumbent upon those who would avail themselves of a statute remedy to make it appear that the requirements of the statute have been strictly observed in all essential particulars. Chapter 85, of the Revised Statutes of 1871, consists of regulations for the taking of bail in civil actions and for the subsequent proceedings thereon.   It is under and by virtue of its provisions that "the original creditor may have a writ of *scire facias* in his own name, from the same court against the bail."   This process supersedes and precludes any other remedy upon the bail bond given to the officer making the arrest.   *Hewins* v. *Currier*, 62 Maine, 236.

But to entitle the original creditor to maintain it, we think it should be made to appear that the mandate in § 1, that " the bond shall be returned with the writ, and the clerk shall note on the writ that a bail bond is so filed," has been performed.   Not only does the report fail to show that these requirements of the statute

were observed, but there is pregnant evidence that they were wholly neglected. It is a significant circumstance that upon the first execution issued in the original case of *Ruggles, Ex'x,* v. *Call,* the notice to bail was given to Berry and one George W. Philbrick, as the sureties of Call upon the bail bond, and no notice was given to Wyman, the co-defendant with Berry in this process, except upon an alias execution issued several months later. It is hardly possible that this should have occurred if the bail bond had been duly returned, and noted by the clerk. Had this been done, it is reasonable to suppose that " the names of the bail, their addition and place of abode if inserted in the bail bond," would have been placed by the clerk on the margin of the execution as directed by § 5, and no such mistake as calling upon one who never became bail, would have been made. The learned counsel for the plaintiff claims that these defects do not exonerate the bail,—that the provisions in §§ 1 and 5 are directory merely, and intended for the benefit of the plaintiff only, in order that his officer may more readily learn upon whom to serve notice, and that the sureties on the bail bond cannot be harmed by the neglect. This view is plausible rather than sound. We think the provisions in the first section which were violated in the present case, were introduced for the benefit and protection of the bail and the officer making the arrest as well as of the plaintiff, and were intended, to borrow the phrase used by MELLEN, C. J., respecting another provision in *Holmes* v. *Chadbourn,* 4 Maine, 13,—" to guard them against any improper management on the part of a creditor with a view to implicate them." Among the objects which those provisions were obviously designed to secure, was facility in the making of the necessary proofs to satisfy the court, and obtain the proper record in cases of surrender of the principal under §§ 7 and 8—as to which the bail might be embarrassed if the plaintiff could, without endangering his own security, pocket the original writ and bond leaving no trace of them in the entries by the clerk under the suit, or on the files of the court. And the bail are entitled to like facilities for the procurement of the copies called for in § 4, in cases of surrender within fifteen days before the entry of the action. Another end to

be gained by having the bond returned with the writ and noted by the clerk, is suggested by the reasoning of the court in *Bean v. Parker*, (a leading and instructive case upon this topic,) 17 Mass. 591, 604. If the bail wish to arrest the principal at a distance from home—in another State, it may be—how else can they so conveniently procure evidence of the fact that they are his bail? The bail and the officer have as great an interest in the observance of these provisions, as the plaintiff in the action. In fine, under our system, the taking of bail and the matters operating to fix, or discharge the sureties, are made so much the subject of statute regulation, that we think the creditor, to entitle himself to the benefit of the security, must see to it that the bond is returned into court with the writ and that the clerk makes the proper note on the writ as required in chap. 85, § 1.

II. The plaintiff took judgment for a sum as debt or damage, exceeding by nearly two hundred dollars the *ad damnum* in her writ. Her vigilant and persistent counsel elaborately urges that this should not be regarded as operative to discharge the bail,— that it does not affect the validity of the judgment, which is good until reversed on error, and not reversible for this cause under our laws, because capable of being cured by an amendment,— that the bail have not been harmed by the error, and cannot be until the final entry of judgment upon the *scire facias*,—and finally he claims that "if the court should be of the opinion that the bail would be discharged, if the judgment should remain as it now is, the error can be cured by entering a *remittitur* for the amount of damages which is in excess of the *ad damnum*;" and thereupon he asks the court to delay the decision, or discharge the report under a provision therein contained, authorizing either party to ask an amendment and the law court to allow the same, or discharge the report and order the case to stand for trial in the court below.

But we think it be must regarded as *res adjudicata* in this State, that an amendment increasing the *ad damnum* will discharge the bail taken on mesne process; *Langley v. Adams*, 40 Maine, 125; that it was rightly held in *Morse v. Sleeper*, 58 Maine 331, that an amendment increasing the *ad damnum* dissolves an attachment,

and that the same result follows when the creditor takes judgment for a sum in excess of the *ad damnum,* and proceeds to levy without amending; that such amendments or irregularities as will dissolve an attachment, will in general discharge bail; that not only will increasing the *ad damnum* by amendment discharge the bail, as directly decided in. *Langley* v. *Adams, supra,* but, that, taking judgment for a sum in excess of it, and attempting to hold the bail therefor by notice will have the same effect; that it does not comport with sound policy to delay the decision or discharge the report to permit the amendment proposed, for if it should be allowed, creditors might thereby be tempted to take their chance of gain at the expense of sureties on a bail bond in the expectation that if the attempt failed, nothing would be lost, all might be set right by an amendment.

It is questionable moreover, whether an amendment, if allowed, could have the effect to revive the liability of bail once discharged in this way. The English system of taking bail is so different from ours, that their decisions cannot well be applied to cases arising under our statutes. It was well said by SHAW, C. J., in *Crane* v. *Keating,* 13 Pick. 342, that "the whole subject of the giving and taking of bail in civil actions is founded on statute, limited, regulated, and controlled by it; that a bail bond partakes very little of the nature of a contract between the parties in whose names it is taken, but is rather *a legal proceeding in the course of justice,* the effect of which is regulated by statute"; and we think it best that all suitors who have occasion to rely on such securities should understand that a careful observance of the statute requirements, and an avoidance of dangerous irregularities in the prosecution of their suits are requisite to make them available.

The view which we have taken of these two points, renders it unnecessary to examine the other matters relied on in defence.

*Judgment for defendants, and for their costs.*

WALTON and DANFORTH, JJ., concurred.

VIRGIN, LIBBEY and SYMONDS, JJ., concurred only in the second point stated in the opinion.