CHRISTIAN W. BIEST, Respondent, v. VERSTEEG SHOE COMPANY, Appellant.

St. Louis Court of Appeals, November 25, 1902.

1. **Agreement: STATUTE OF FRAUDS.** An agreement which can not be performed in one year from the date of making, is within the statute of frauds, although it may be completely performed in one year from the time when performance is to begin.

2. ———: ———. An agreement fixing a definite period for performance to continue to a date more than one year after the making of the agreement, is within the statute.

3. ———: ———: CONTRACT. The contract of a party to render service to another for more than a year from its date is within the statute, notwithstanding one or both parties may have the option of ending the contract by notice before a year elapses.

4. ———: ———: MEMORANDUM. A written contract employing plaintiff "as a traveling salesman in the territory agreed upon [a list of these towns is hereto attached]" which was never completed by making out a list of the towns and attaching it to the contract, is not a sufficient memorandum to take the agreement out of the statute of frauds, because an essential term of the agreement, namely, the territory to be traveled by the plaintiff, was not noted in writing.

5. Petition: COUNT: PLEADING: VARIANCE. The second count of the petition *held* to sufficiently charge that defendant agreed to pay plaintiff the amount of his necessary traveling expenses, not to exceed a certain sum, instead of charging that he was to be paid said sum absolutely; and *held*, further, that there was no variance between the contract pleaded and the one proven in this regard.

6. Proof: JURY: PRACTICE, TRIAL: PRACTICE, APPELLATE. There was sufficient proof to go to the jury as to what plaintiff's necessary traveling expenses actually were.

7. Instruction: VERDICT: JURY: PRACTICE, TRIAL: DAMAGE. An instruction telling the jury if they found for the plaintiff on the second count of his petition their verdict should be in such sum as they found to be justly due him under the contract, was so modified by other instructions telling them how to estimate the damages to plaintiff, that the jury were not left to pass on the law of the matter, but were advised specifically as to what facts they must weigh in estimating the damages.

8. Instructions: BREACH OF CONTRACT. Instructions that if plaintiff gave some attention to his own affairs while in defendant's employ with defendant's consent, and that if he gave time to his own affairs but not so as to take up time which should have been devoted to defendant's business, such acts were not breaches of plaintiff's contract, *held* proper, especially in view of the counterparts of said instructions given at defendant's request that if plaintiff neglected defendant's business to attend to his own, this was a breach of his contract.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

REVERSED AND REMANDED.

*Carr & Carr* for appellant.

(1) The so-called contract of February 5, 1900, remained indefinite and incomplete by reason of the

failure of the parties to subsequently agree on plaintiff's territory. (2) The contract being denied in the pleadings, the statute of frauds is available at the trial without special pleading. Royal Remedy Co. v. Grocer Co., 90 App. 53; Hillman v. Allen, 145 Mo. 643; Boyd v. Paul, 125 Mo. 9; Devore v. Devore, 138 Mo. 181; Hackett v. Watts, 138 Mo. 502. (3) A contract for one year, to commence at a future date, is within the statute of frauds. Sharp v. Rhiel, 55 Mo. 97; Briar v. Robertson, 19 Mo. App. 66; Cook v. Redman, 45 Mo. App. 397.

*J. Hugo Grimm* for respondent.

(1) The contract sued upon in the first count does not come within the statute of frauds at all, since it may be performed within one year, and, moreover, expressly provides that plaintiff should have the right to terminate it within the year. Boggs v. Laundry Co., 86 Mo. App. 622; Harrington v. Kansas City Cable Ry. Co., 60 Mo. App. 228; 1 Reed Statute of Frauds, secs. 192, 201. (2) Since the contract does not come within the statute, it is competent by parol evidence to show any provision or stipulation that was omitted from it, especially where it appears from the writing that something is omitted. Ringer v. Holtzclaw, 112 Mo. 522; Williams v. Railroad, 153 Mo. 534; Carney v. Light Co., 10 Mo. App. 536; Ellis v. Harrison, 104 Mo. 278; Scott v. Scott, 95 Mo. 318.

GOODE, J.—Biest, the plaintiff, was in the service of the VerSteeg Shoe Company and its predecessors, the VerSteeg-Grant Shoe Company and the Tri-State Shoe Company as a traveling salesman from the year 1892 to April, 1900, the territory he canvassed lying in the southeast and southwest portions of Missouri, the southern part of Illinois and certain towns in the States of Indiana and Kentucky.

A written contract was signed by Biest and the VerSteeg-Grant Shoe Company on the first day of Oc-

tober, 1897, by which Biest was employed as salesman
"in the territory agreed upon" for the term of two
years from said date, to be binding for two more years
unless he gave written notice to the contrary sixty days
before the expiration of each year.   Said contract was
*mutatis mutandis,* like the one to be quoted below with
the exception that the latter stipulated a list of towns
to be visited by Biest should be attached to it.

Plaintiff continued to work under the first contract
until the second day of October, 1899, when it was ex-
tended for the further period of six months, or until
the first day of April, 1900.   In view of the approach-
ing expiration of that extension, Biest and the Ver-
Steeg-Grant Shoe Company made another contract on
the fifth day of February, 1900, which is as follows:

"This agreement is made for a term of one year
commencing April 1, 1900, between the VerSteeg-Grant
Shoe Company and C. W. Biest, and is to be binding
for two more years unless written notice be given to
the contrary by C. W. Biest sixty days before the ex-
piration of each year.   It is also agreed that if the said
C. W. Biest wishes to discontinue this contract on Oc-
tober 1, 1900, he can do so by giving said VerSteeg-
Grant Shoe Company notice of same on August 1, 1900.

"The VerSteeg-Grant Shoe Company agrees to
employ C. W. Biest as traveling salesman in the terri-
tory agreed upon (a list of these towns is hereto at-
tached) and further agrees to pay the said C. W. Biest
the sum of four thousand dollars per year and neces-
sary traveling expenses, not to exceed twenty-two hun-
dred dollars per year, provided his sales exceed one
hundred thousand dollars in the territory agreed upon.
The said C. W. Biest agrees to faithfully devote his full
time and energy to the sale of goods in the territory
agreed upon.

"It is further agreed that the said C. W. Biest will
keep Frank Hahn, or some one acceptable to the Ver-
Steeg-Grant Shoe Company actively engaged as helper
in said work, and if the party selected by said C. W.
Biest should not be acceptable to the said VerSteeg-

Grant Shoe Company, the guarantee clause of this contract relating to traveling expenses shall be at the rate of fourteen hundred dollars instead of twenty-two hundred dollars per annum for such portion of the year or years still covered by this contract.

"It is further agreed that should the sales in said territory not reach the aggregate of one hundred thousand dollars the guarantee shall be three thousand dollars instead of four thousand dollars.

"The VerSteeg-Grant Shoe Company further agrees to allow the said C. W. Biest, when absolutely necessary, to cut the regular catalogue selling prices (not including jobs or rubber goods) to the extent of one-half per cent without deducting same from his compensation, any amount in excess of one-half per cent, or any shoes given away to customers or allowances made or extra discounts allowed to be deducted by customer, are to be charged to the said C. W. Biest or can be offset by the sale of certain goods bearing an additional profit and so designated in our catalogue. The one-half per cent to be allowed only in case the sales exceed one hundred and twelve thousand dollars against the highest amount of salary and expense guaranteed.

"Should the said C. W. Biest's sales fall below one hundred thousand dollars then this one-half per cent allowance is to be allowed him only if the amount of commissions that would be due him on a five per cent basis exceeds the compensation heretofore guaranteed to the said C. W. Biest; otherwise all cuts in prices, allowances, etc., to be charged to the said C. W. Biest.

"It is further agreed that the said VerSteeg-Grant Shoe Company, give said C. W. Biest credit for all duplicate orders filled by us from his customers during each season ending April 1, and October 1. Said VerSteeg-Grant Shoe Company, however, agrees to give the said C. W. Biest credit for such mail orders as may come from his customers for the two seasons following the season in which he actually sold such customer on the road and while in the employ of the VerSteeg-Grant Shoe Company, on condition that proper efforts shall

have been made by said C. W. Biest, or his helper, in soliciting orders from said customer. This also applies to all customers sold by him two seasons ago. New accounts brought into the store by street men or our neighbors not to be included (only after having been sold by him first or next trip) only on such accounts (in the territory agreed upon) as are sold by said C. W. Biest on the road can credit be claimed.

"It is further agreed that no credit can be claimed by said C. W. Biest for orders not accepted, not shipped or not paid for, or where costs of collection be five per cent or over.

"If the said C. W. Biest's compensation, figured upon a five per cent basis, as per above contract, exceed the salary and expenses as guaranteed, the said VerSteeg-Grant Shoe Company agrees to pay him such excess.

"It is further agreed that the VerSteeg-Grant Shoe Company allow the said C. W. Biest one per cent additional commission on all goods sold to the Famous Shoe Company, being located in East St. Louis, Illinois, and that this one per cent additional commission will also apply to any store the said C. W. Biest may become financially interested in and which we may jointly agree to.

"It is further agreed that said VerSteeg-Grant Shoe Company pay the said C. W. Biest commission only on actual sales of rubber goods, and the said VerSteeg-Grant Shoe Company reserve the privilege of sending a special rubber salesman to said towns and on which sales said C. W. Biest can claim no commission.

"It is further agreed that the said VerSteeg-Grant Shoe Company will allow C. W. Biest access to the ledger twice a year in checking up his list of sales.

"Signed in duplicate this 5th day of February, 1900.

"VERSTEEG-GRANT SHOE COMPANY,
"per W. B. VERSTEEG, Secy."

A dispute having arisen between the parties in regard to the retention by the plaintiff of Frank Hahn,

the helper provided in the foregoing contract, plaintiff sent in the checks for his sample trunks on the second day of April, 1900, accompanied by the following letter:

"Saint Louis, April 2, 1900.

"VerSteeg Shoe Co., City:

"Gentlemen: As my contract with your company has been broken by the action of your president, Mr. VerSteeg, in discharging me and refusing to recognize said contract, I herewith hand you my checks for said sample trunks, which you, no doubt, will want.

"Yours truly,
"C. W. BIEST."

In answer to that letter the defendant wrote plaintiff the next day as follows:

"April 3, 1900.

"C. W. Biest,

"Botanical Ave., City.

"Dear Sir: Your note of April. 2 duly received. You are mistaken in saying that you are discharged by our president, Mr. VerSteeg. On the contrary he insisted that you should carry out all the terms of the understanding between us. If you desire to go out on the road, we will hold your place open for you for any reasonable time.

"Yours truly,
"VerSteeg Shoe Company."

Other correspondence and negotiations looking to a continuance of the relations of the parties followed, but they were unable to come to terms and the result of the disagreement was the present action, in which the plaintiff seeks in the first count of his petition to recover on the contract of February 5, 1900, what he would have earned if that contract had been performed, and on the second count a balance claimed to be due him for the salary and expenses of the last six months he worked under the contract of 1897, that is to say, from October, 1899, to April 1, 1900.

He alleges that he stood ready to perform the contract of February, 1900, but was wrongfully prevented from doing so by the defendant and that he did fully perform the other so that there became due him thereunder the sum of $1,500 as guaranteed salary and the sum of $1,100 as guaranteed expense money, or in all the sum of $2,600; but that he had only been paid $1,213.17, leaving a balance due him of $1,362.83, for which he prays judgment in the second count, while the amount prayed for in the first count as what he would have earned if the contract therein declared on had been executed, is $5,000 for each year of the three years stipulated in the contract or $15,000 in all.

The answer to the first count contains a general denial and the special defense that the contract of February 5, 1900, was never completed, because, it was understood and agreed by the parties that before it became a complete contract, a list of towns which should constitute the territory of plaintiff as salesman was to be settled on by him and the defendant and attached to the written instrument; that no list of towns was ever agreed on or prepared so that the territory in which plaintiff was to travel, the settlement of which was an essential portion of that agreement, was never fixed.

The answer to the second count of the petition, in addition to a general denial, alleges it was a part of the contract of 1897 that plaintiff was to devote his full time and energy during its continuance to the sale of defendant's goods in the territory agreed on and when at home was to assist in selling goods in the house without additional compensation, and that although the defendant fully complied with the conditions of the contract, plaintiff refused to devote his full time and energy to selling goods in his territory, but spent most of the time during the extended period of the contract, attending to his own business, to-wit, managing the store he was interested in in East St. Louis.

It is further stated in the answer that if the plaintiff had faithfully devoted his full time and energy to the discharge of his duties during the period for which

said contract was extended, he would have sold goods for the defendant to the amount of not less than $40,000, by his own personal efforts; but by reason of his gross neglect of duty, the sales made by him during that period amounted only to about $14,000, so that there was a falling off of $26,000, on which defendant's profits would have been $2,600, for which it prayed judgment by way of counterclaim.

The answer to the second count of the petition contains the following paragraph:

"Plaintiff further states that a certain list of towns was prepared and agreed upon between plaintiff and defendant as the territory of plaintiff under said contract and that said list of towns so agreed upon was made a part of said contract and that, prior to the expiration of said contract plaintiff and defendant by an agreement in writing, continued said contract in force and effect for a further period of six months, to-wit, for a term beginning the first day of October, 1899, and ending on the first day of April, 1900."

Plaintiff treated himself as discharged on the first day of April, 1900, because, as stated, he no longer desired to retain Hahn as his helper, Hahn being unprofitable to him, he said, and the contract giving him the right to engage some other helper acceptable to the defendant, which right the defendant refused to concede, claiming Biest asserted it in circumstances when it was unfair to do so and insisting on the retention of Hahn as the condition on which plaintiff could remain in its employ.

The following defenses to the first count of the petition were presented by the instructions requested:

First. That the contract of February 5, 1900, is void under the statute of frauds, because it is an agreement not to be performed within a year from its date and the memorandum of the agreement was incomplete in not stating the territory wherein plaintiff was to travel or having a list of towns attached, which essential

element of the agreement could not be supplied by oral testimony.

Second.   That the contract remained incomplete and incapable of supporting an action.

Third.   That the defendant was justified in insisting on the retention of Hahn and that in doing so no breach of the contract was committed which warranted Biest to consider himself discharged or to quit defendant's service.

Fourth.   That Biest entered into the arrangement in bad faith and without the intention of rendering faithful service.

The instructions given and refused bore on those defenses, but it is unnecessary to state them.

The special defense to the cause of action stated in the second count and the counterclaim set up by defendant are based on the alleged failure of the plaintiff to devote his time and energy to the prosecution of defendant's business as called for by the contract; and on this question we state that the evidence is highly contradictory as to whether he did in good faith attend to his business for the last six months he worked for the defendant, or neglected it to look after outside business. Defendant claims Biest stayed in St. Louis during the fall of 1899, long after he should have been on the road; that he spent most of his time attending to the Famous Shoe Store in East St. Louis instead of looking after his trade; that he remained in Paducah, Kentucky, a week, on an errand of his own connected with the sale of a shoe store there by a man named Adkins to a third party, and a sale by Biest to Adkins of Biest's interest in the East St. Louis store; that he sold goods for the Desnoyers Shoe Company and received commissions from it instead of acting exclusively for the defendant; that he jobbed goods from the East St. Louis store to a party in Illinois; that he was hostile to the defendant company and was arranging to go with the Giesecke Shoe Company, one of defendant's competitors in the city of St. Louis; also other conduct in disregard and breach of his duty.

On the other hand, the testimony of Biest himself and of some witnesses is that he gave as much of his time to the defendant's business and as little to his own as usual; that he had long been in the habit of paying some attention to the East St. Louis store, with the knowledge and consent of the defendant; that he remained in St. Louis during the fall until after the fair was over, which was according to the practice of defendant's salesmen and the desire of the president of the company, who was endeavoring to get him to buy an interest in the company; that when he applied for expense money to go out on the road the treasurer of the defendant refused him by order of the president; that plaintiff went to Paducah to sell goods for the defendant and took orders while there, only casually attending to his own affairs; that the commission received from the Desnoyers Shoe Company was not for any sales made by him at all in behalf of that company, but grew out of some purchases made by Adkins after he became interested in the East St. Louis store for which the Desnoyers Shoe Company agreed to allow the Famous Shoe Company a commission, which the latter turned over to Biest because he took trouble for it without compensation, and, lastly, that while he sold a small batch of shoes amounting to about two hundred dollars to a dealer in Illinois for the Famous Shoe Company, this was a line of shoes wanted by the customer which the VerSteeg Shoe Company could not supply and therefore it was not injured when they were supplied by the East St. Louis house.

Errors assigned against the validity of the judgment on the second count are:

First. A variance between the petition and the proof in that the petition counted on a contract by which expense money to the extent of twenty-two hundred dollars a year was guaranteed by the defendant, whereas the proof showed it only guaranteed plaintiff's necessary expenses not to exceed that sum.

Second. Insufficient proof of what plaintiff's traveling expenses were.

Third. That the verdict on the count was excessive.

Fourth. That the court submitted to the jury a question of law in an instruction which told them if they found for the plaintiff on the second count, the verdict must be in such sum as they might find was justly due him under the contract, if any.

Fifth. That the defendant himself admitted breaches of his contract in not going on the road earlier in the season, in accepting commissions from the Desnoyers Shoe Company and in making sales for the Famous Shoe Company.

On that count the court fully instructed the jury and the correctness of its charges will be discussed in the opinion.

A verdict was returned for the plaintiff for $1,325 on the first count of the petition, and $1,425 on the second count and against the defendant on its counterclaim.

The able counsel in this case prepared it for our examination with noteworthy closeness, perspicuity and force and we must express appreciation of their work; it has lightened our own and assisted us in reaching conclusions on important propositions which we hope are in accord with the best considered judgments of other courts.

I. The first point for decision is: Is the contract of February 5, 1900, within that provision of the statute of frauds, which says no action shall be brought to charge any person upon any agreement that is not to be performed within one year from the making thereof unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing signed by the party to be charged therewith or some other person by him thereto lawfully authorized? R. S. 1899, sec. 3415.

This clause of our statute of frauds is substantially, if not identically, the same as the one found in the statutes of most of the States and the English statute; but the decisions on it, like those on other clauses, are

somewhat conflicting, and in the absence of a judgment on the very point at issue by an appellate court of this State, we must make up our minds as to what the law is from the weight of authority elsewhere.

Certain constructions given to the clause in question may be premised as showing the tenor of the decisions and as bearing on the particular contract before us:

An agreement which can not be performed within one year from its date, although performance may be completed in one year from the time it is begun, is within the statute. The year runs from the day when the agreement is made and not from the day when performance is to begin. Sharp v. Rhiel, 55 Mo. 97; Niller v. Goodrich Bros. Banking Co., 53 Mo. App. (K. C.) 436; Briar v. Robertson, 19 Mo. App. (K. C.) 66; Cook v. Redman, 45 Mo. App. (K. C.) 397; Bracegirdle v. Heald, 1 B. & A. 722; Snelling v. Lord Huntington, 1 C. M. & R. 20.

An agreement which may, perchance, be performed within a year from its date, consistently with its terms and not in violation of them, is not within the statute, although the performance is liable to occupy more than a year; such as a contract to support one for life, or during an indefinite period, or to work for another for life or for an indefinite period, or to do any other thing possible to be done within a year although the doing of it may continue, and may be expected to continue, longer. Foster v. McO'Blenis, 18 Mo. 88; Sugget's Admr. v. Cason's Admr., 26 Mo. 221; Boggs v. Laundry Co., 86 Mo. App. (St. L.) 616; Harrington v. Railway, 60 Mo. App. (K. C.) 225; Warner v. Texas & Pacific Ry., 164 U. S. 418; Roberts v. Rockbottom, 7 Met. 46; Green v. Harris, 9 R. I. 401; Hill v. Jamieson, 16 Ind. 125; Russell v. Slade, 12 Conn. 455; Peter v. Compton, 1 Smith's Leading Cases (9 Ed.), 586; Hutchinson v. Hutchinson, 46 Me. 154; Dresser v. Dresser, 35 Barb. 573; Heath v. Heath, 31 Wis. 223; Bule v. McCrea, 8 B. Mon. 422; Howard v. Burgen, 4 Dana 137; Murphy v. O'Sullivan, 11 West Jur. N. S. 111;

McPherson v. Cox, 96 U. S. 404; Walker v. Johnson, supra; Southwell v. Beezley, 5 Oregon 43.

This rule has been extended in a few cases so as to exclude agreements from the statute if it is physically possible to execute them within a year (apparently without regard to what may have been in the minds of the parties concerning the time of their execution), but by nearly all authorities is applied only to agreements which show the parties contemplated the possibility of full performance being rendered in a year; not those of which the performance is barely possible but improbable. Boydell v. Drummond, 11 East. 155; Hurrin v. Butters, 20 Me. 122; Lockwood v. Barnes, 3 Hill (N. Y.) 128; Groves v. Cook, 88 Ind. 169; Farrell v. Tillson, 76 Me. 267; Hinckley v. Southgate, 11 Vt. 428; Sines v. Supt. of Poor, 58 Mich. 503.

If the time of performance depends on a contingency which may happen within a year and thereby result in a complete execution of the contract consistently with its terms, it is an agreement not within the statute although its performance would extend beyond the year if such contingency did not happen therein. This rule was established by the leading case on the subject against Lord Holt's dissent; Peter v. Compton, 1 Smith's Leading Cases (9 Ed.) 586; Roberts v. Rockbottom, Lockwood v. Barnes, Herrin v. Butters, supra, Saunders v. Kasterbrine, 6 B. Mon. (Ky.) 17; Randolph v. Turner, 17 Ohio 262.

It is well-nigh universally held that if an agreement fixes a definite period longer than a year during which performance shall continue, so that it was plainly not contemplated by the parties that it should terminate sooner, the statute applies; that is, where the contract not only allows but *requires* more than a year for its performance. Pitcher v. Wilson, 5 Mo. 46; Comes v. Lamson, 16 Conn. 246; Benier v. Cabet Mfg. Co., 71 Me. 506; Freeman v. Foss, 145 Mass. 361; McPherson v. Cox, supra.

And this rule is enforced generally though the agreement recognizes the possibility of some conting-

ency happening to terminate performance before a year elapses, as will be seen from the authorities hereinafter cited.

Performance as used in the statute is construed to mean complete and full performance, according to the terms of the agreement. Boydell v. Drummond, supra; Giraud v. Richmond, 2 C. B. A. 35; Parks v. Francis, 50 Vt. 626; McElroy v. Ludlin, 32 N. J. Eq. 828; Tatterson v. Suffolk Mfg. Co., 106 Mass. 56; Tiernan v. Granger, 65 Ill. 351.

The mischief meant to be guarded against by this clause is leaving the proof of any contract which is to run beyond a year dependent on the memory and truthfulness of witnesses; or, as is sometimes said, to be vouched by parol evidence. Boydell v. Drummond, supra; Smith v. Westall, 1 Ray. 316; Rucker v. Harrington, 52 Mo. App. (K. C.) 481.

The agreement between Biest and the defendant was to continue one year from the first day of April, and having been signed on the fifth day of February is within the statute unless it is taken out by some other term. The stipulation relied on for that purpose is the privilege given to Biest to discontinue the contract on the first day of October following its execution, by notifying the shoe company of his intention on the first day of August.

The question then is: Is the agreement taken out of the statute because it contains an option or privilege in favor of Biest permitting him to end it during the first year? And this question, in our opinion, must be answered by the weight of precedents directly in point rather than by reconciling either the judgments or reasons of all the cases bearing on it. A few decisions which exclude an agreement having a fixed time of performance but liable to be terminated by a contingency (such as the death of a party) from the operation of the statute, as an agreement to support a minor until his majority, or to abstain from doing an act indefinitely, would of course exclude this agreement if they were followed. But most cases are the other way, and hold

a contract to render services for more than a year to be within the intention and force of the statute, notwithstanding one or both of the parties may have the option of ending it by notice in a year, because full performance can not be rendered in a year consistently with the understanding of the parties. Dobson v. Collis, 1 Hurls. & Nor. 81; Ex Parte Acraman, 4 DeG. & F. J. 541; 7 L. T. R. 84; Booth v. Prittie, 6 Ontario Ap. 680; Packet Co. v. Sickles, 72 U. S. 580; Warner v. Railway, 164 U. S. 430; Meyer v. Roberts, 46 Ark. 80; Wilson v. Ray, 13 Ind. 1; Harris v. Porter, 2 Harr. (Del.) 27; Green v. Steel Co., 75 Md. 109; Deaton v. Tenn. Coal & Railway Co., 12 Tenn. 650; Blanding v. Sargent, 33 N. H. 239; Roberts v. Rockbottom, supra; Roberts v. Tucker, 3 E. 632; Sweet v. Lee, 3 M. & G. 452; Farrington v. Donahue, Qr. R. 1, C. L. 675; Murphy v. O'Sullivan, 11 Qr. Jur. N. S. 111; Souch v. Shawbridge, 2 C. B. 808; Ely v. Life Ins. Co., L. R. 1 Ex. D. 20; Becston v. College, 4 Bing. 309; Ridley v. Ridley, 13 W. R. 736; Fenton v. Embless, 3 Burr. 1279; Brown on Statute of Frauds.

A number of those cases are on the very point involved, and we have found none to the contrary exactly in point, except Smith v. Conlin, 19 Hun (N. Y.) 234, and Blake v. Voigt, 134 N. Y. 69; the first of which is noticed and criticised as clearly erroneous in a note to Peter v. Compton, 1 Smith's Leading Cases (9 Ed.), loc. cit. 599; while the second adopts the first as a precedent. Peters v. Westborough, 19 Pick. 364, and Wiggins v. Keiger, 6 Ind. 252, are opposed to the principle of the cases relied on and to the point decided in many of them, since they hold agreements to support minors for a designated period and not merely for life, to be without the statute.

The English cases dealing with agreements depending on the continuance of life are to the effect that if an agreement may possibly be terminated by the death of a party within a year, yet if it is apparent that both parties contemplated it should extend longer than a year though no limit be designated, the statute takes

effect and there must be a note to render a breach act-
ionable.　The American cases, on the other hand, main-
tain the rule that if the time for performance is not
definitely fixed beyond a year, the possibility of death or
some other event ending the performance within that
time is sufficient to uphold a verbal agreement.

It is much easier to reconcile the rule, that an option
to terminate a contract within a year will not take it out
of the statute if it is made to run for a fixed period
longer than a year, with the reasoning of the English
than of the American cases; although the latter, as well
as the former, for the most part, declare such agree-
ments within the statute.

Several arguments are advanced in support of the
doctrine; as that a contract is not performed within a
year merely because it is put an end to in that period.
But why should that argument not apply to the conting-
ency of death as well as to the exercise of the privilege
to terminate by one of the parties?

On the other side, it is argued that if there is a
reservation in the contract of a right to end it by notice
and this is done, the contract is as much performed with-
in the contemplation of the parties as if it had run the
whole time, and in a sense this is true.

It is also said, that, in order to exempt a contract
from the operation of the statute on the score that it may
be ended within a year by some event, the contingency
must be one which tends to the performance of the con-
tract as originally contemplated, instead of to its annul-
ment or determination.　And on this theory, perhaps,
it is possible to reach the conclusion that there is an
essential difference between a contingency like death,
which lies beyond the control of the parties and so may
have been contemplated by them as rounding out the
expected performance if it happens, and a contingency
dependent on their act, and which, therefore, annuls the
contract and prevents performance.

All contracts not binding on personal representa-
tives are ended by the death of a party, and probably
all except marriage may be put an end to at any time

by mutual consent; hence, by a rigorous application of these theories the statute of frauds would affect but few agreements and fall far short of accomplishing the purpose of its enactment. Those arguments, if sound in reasoning at large, are unsound in reasoning on the statute; for they take no account of its purpose; which, as said above, is to exact written proof of agreements to continue longer than a year, so as to avoid the uncertainty of oral testimony; and this logically requires all agreements calling for more than a year of performance to be included within the statute, notwithstanding they may be terminated sooner with or without the volition of the parties. If an agreement is to continue more than a year, with disputes concerning its terms liable to occur at any time, the policy of the law demands a memorandum in every instance to prevent disputes and afford means of settling them correctly when they arise.

But this statute is too ancient for a case to be brought within or put outside its effect by argument and is to be enforced according to its accepted interpretation; and after looking into all the cases to which our attention was directed, or which we found during our study of this one, we feel bound to hold the contract before us falls within the statute as usually construed, and must be proved by a sufficient memorandum for an action to lie on it.

The next inquiry is as to the sufficiency of the writing; and on this point we have no doubt that an essential item in the contract was omitted; in fact, the memorandum says on its face the Shoe Company agreed "to employ Biest *as a traveling salesman in the territory agreed upon* (a list of these towns is hereto attached)" but no list of towns was attached nor was one designated by the signed instrument so as to be connected with it without resorting to oral testimony; therefore there was an understanding as to territory which was never completed by settling precisely what territory Biest was to have, as the defendant claims; or, if settled as plain-

tiff claims, never signed or made part of the memorandum.

The fact that the writing itself shows there was a verbal agreement as to one term not included in the memorandum, answers the respondent's argument that the statute of frauds has no application to written contracts. The law is that all the essential terms of the agreement must be in writing so that parol evidence need not be resorted to to establish any of them. 2 Kent's Commentaries (14 Ed.) p. 511; Brown on Statute of Frauds (5 Ed.), sec. 371; Ringer v. Holtzclaw, 112 Mo. 519; Boyd v. Paul, 125 Mo. 9; Kelly v. Thuey, 143 Mo. 435; Smith v. Schell, 58 Mo. 218; Miller v. Goodrich, 53 Mo. App. (K. C.) 430; Claes L. Mfg. Co. v. McCord, 65 Mo. App. (St. L.) 507; Rucker v. Harrington, 52 Mo. App. (K. C.) 492. And when it is apparent a term agreed on was omitted from the memorandum, it can not be supplied by oral testimony. Cases, supra.

No more proof of the usefulness of stating in writing the territory to be canvassed by the plaintiff is needed than the testimony in the present case affords; for some of it goes to show there had previously been disputes about his territory and as to whether he or another salesman was entitled to credit for sales made in certain towns.

It is contended resort may be had to extrinsic evidence to show the conditions under which the agreement was made; the previous habits of the parties, what territory Biest had theretofore canvassed, and other matters in order to complete the contract. As to such evidence the law is in nowise different in respect to agreements required by the statute of frauds to be proved by a note and other agreements reduced to writing; either may be elucidated, explained and construed by the circumstances attending their execution. Brown on Statute of Frauds (5 Ed.), sec. 409. But if an agreement affected by the statute of frauds shows on its face it is incomplete in an essential part, it can not be completed by oral evidence; for, as has often been said, that would amount to construing the statute to require

a portion, but not all, of the elements of the agreement to be shown by a memorandum. Warren v. Mayer Mfg. Co., 161 Mo. 112; Wiel v. Willard, 55 Mo. App. (St. L.) 377. The law on this subject has been settled in this State in accordance with what it is elsewhere, since the decision of Ringer v. Holtzclaw, supra, overruled the cases of O'Neil v. Crim, 67 Mo. 250, and Lash v. Parlin, 78 Mo. 391, which supported actions based on incomplete memoranda. If the territory to be canvassed by Biest was an essential part of the contract, it certainly can not be shown by oral testimony what was agreed on as his territory, however positive and direct the testimony may be. Smith v. Shell, 82 Mo. 215; Boyd v. Paul, Ringer v. Holtzclaw, Wiel v. Willard, supra.

The memorandum on its face calls for a list of the towns to be attached and shows they were an agreed part of the arrangement; but if such a list is in existence (as to which the evidence is highly uncertain) it does not help the plaintiff, because it is nowhere shown to have been signed nor is it designated in the writing which is signed so as to identify it. Christensen v. Wooley, 41 Mo. App. (St. L.) 53. In fact, whatever list plaintiff and the defendant had seems to have been made some years previously and was not introduced by the plaintiff.

The testimony of the plaintiff on this question was not that the matter of territory was unimportant; for he swore it was extremely important because it required several years to build up a trade in a new territory; and the whole theory of his case on the first count is that he was driven by defendant's discharging him, into a new field where his sales were less than they would have been in his old one. But he affirmed he did not know the memorandum contained such a stipulation at the time he signed it and that it was agreed and understood between him and W. B. VerSteeg, the president of the company, that he should have his old territory. VerSteeg, on the other hand, swore the stipulation was put into the contract on account of previous disputes with Biest

as to just what towns constituted his territory, for the purpose of preventing future disputes; also, that the territory traveled over by Biest and other salesmen was changed occasionally instead of continuing the same from year to year. The territory to be traveled under the contract of 1897 was agreed on, as both the answer and the proof show, thus demonstrating its materiality in the minds of the parties. Plaintiff said the territory was to be the same under the arrangement for 1900; but that was proving the territory orally and was inadmissible. There is evidence, too, that plaintiff was requested on different occasions to make out a list of the towns he wished to visit in order that the territory might be determined and the contract completed.

The result is, we must hold the cause of action stated in the first count of the petition to be within the statute of frauds and unproven by a memorandum sufficient to support an action.

2. The first point made against the judgment on the second count is that there was a variance between the petition and the proof in that the former declared on a contract by which the defendant guaranteed plaintiff a certain sum a year for traveling expenses, regardless of what his expenses actually were, while the proof showed a contract allowing him his necessary traveling expenses, not to exceed a certain sum per year.

That interpretation may be put on the petition if we attend only to the paragraph in which plaintiff alleges performance of the extended contract of 1897 whereby there became due him one-half year's salary (being the guaranteed salary) and one-half year's expenses; but that paragraph is in fact not the one wherein the plaintiff states the contract, which is done in a preceeding paragraph as follows:

"And plaintiff states that in and by said contract defendant agreed to pay him the sum of $4,000 per year and allow him traveling expenses *not to exceed* $2,200 *per year.*"

It thus appears plaintiff stated the contract exactly

as defendant contends it was and as the proof showed. How then was the defendant prevented from moving for a more specific enumeration of items of expense if it desired particulars, especially as it had a copy of the contract, which was executed in duplicate?

Besides, when plaintiff was questioned as to his expenses, the objection made was not on the ground of variance, nor on the mode in which the petition stated the contract, but on the ground that the witness had already testified he kept no account of expenses and had no recollection of what they were.

This assignment, therefore, will be overruled.

It is contended that no sufficient proof was made as to what plaintiff's expenses actually were during the last six months, and it is true plaintiff testified he kept no personal expense account. There was evidence, however, as to what his expenses were; for it was shown that certain entries of money paid to him on defendant's books were marked as expense charges, and plaintiff testified the amounts shown on the books were actually used by him for expenses on the road.

On this question of expense the court instructed the jury to allow plaintiff the amount of his traveling expenses, not to exceed eleven hundred dollars, if they found the issues in his favor on the second count, which was correct; whereas, the instructions prayed by the defendant on that point were incorrect, for they propounded the theory that plaintiff was not entitled to receive credit for any expenditures unless he kept an itemized account or submitted vouchers. All that was necessary was for plaintiff to introduce substantial testimony by which the jury could estimate what his expenses were, and we think this was done.

Neither do we agree that the verdict on the second count was excessive, although defendant has gone into a minute calculation to show it was slightly so. We have examined it in comparison with the testimony and think the contention that the verdict was excessive is not made out clearly enough for us to condemn the action of the court below in refusing to set it aside.

As to the point that the court erred in telling the jury if they found for the plaintiff, their verdict should be in such sum as they found to be justly due him under the contract; that direction, or line from an instruction, must be construed in connection with the other instructions; and when this is done it will appear the jury were not left to pass on the law of the case; for in the ninth instruction they were specifically told how to estimate the damages to be awarded and what facts to consider in making their estimate; that is, how to find out what sum was justly due the plaintiff; said instruction reading as follows:

"The jury are further instructed that if their finding be for the plaintiff on the second count of the petition, the verdict must be for the sum of fifteen hundred dollars for plaintiff's services, plus also the amount of his traveling expenses not exceeding the sum of eleven hundred dollars, from which you must deduct such sum as you may find plaintiff has heretofore received from defendant on account of said services and expenses; and on the balance, if any, you will allow interest at the rate of six per cent per annum from the seventeenth day of April, 1900."

As to whether plaintiff was guilty of a slight breach of his contract in staying off the road too much or in receiving a commission from the Desnoyers Shoe Company, or in selling a parcel of shoes for the Famous Shoe Company of East St. Louis, the evidence is conflicting, especially as to the first issue; but we do not regard said alleged breaches as of much importance. Those matters were trifling and are explained in the instructions of the court and the jury properly advised as to how they should determine whether or not they constituted substantial violations of his contract by the plaintiff.

The purport of the instructions was that if the plaintiff devoted such energy and attention to his duties as is usually given by industrious business men no breach occurred because he gave some attention to his own affairs, unless he thereby took up time which he

should have devoted to the defendant's interest; also, that if what time he gave to the business in East St. Louis was with defendant's consent, it constituted no breach of the contract. The counterparts of those charges were given at defendant's request, telling the jury, in effect, that if plaintiff neglected defendant's business for his own, or ran the East St. Louis store without defendant's consent, he could not recover; but that defendant was entitled to recover on its counterclaim for such breaches whatever damages the jury might find it sustained thereby. It would have been manifest error, in view of the testimony, to have given some of the instructions requested by the defendant on those matters, since they were peremptory charges that the conduct of the plaintiff amounted to breaches. The evidence was far from warranting that conclusion, it being for the jury to pass on the question of whether a breach or breaches had been committed.

We think the case stated in the second count was fairly tried and that the finding thereon ought to be upheld.

The judgment is reversed and the cause remanded with directions to the court below to set aside the finding for the plaintiff on the first count of the petition, without disturbing the finding on the second count or on the counterclaim, and that judgment be entered as of the date of the original entry in favor of the plaintiff for the amount of the verdict on the second count, to-wit, the sum of $1,425; the costs in the trial court to be awarded at the discretion of that court. R. S. 1899, sec. 1550. The costs of this appeal are adjudged against the plaintiff. *Bland, P. J,* and *Barclay, J.,* concur.