Onzell WILLIAMS, Plaintiff-Appellant,

v.

JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY,
Defendant-Respondent.

No. 50207.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 30, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 29, 1986.

Charles A. Lee, Jr., Clayton, for plaintiff-appellant.

Evans & Dixon, and Eugene K. Buckley, St. Louis, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

Onzell L. Williams appeals from a judgment entered in favor of the respondent, John Hancock Mutual Life Insurance Company, following a jury trial in St. Louis County Circuit Court on appellant's claim that he was shot and partially paralyzed due, at least in part, to respondent's negligent issuance of an insurance policy on his life. We affirm.

On October 20, 1975, an application for a $5,000 insurance policy on appellant's life was submitted to respondent by Angela Franks who worked as an agent for respondent. On November 1, 1975, the policy was issued naming appellant's wife, Susan Williams, as the beneficiary. On December 16, 1975, Angela Franks conveyed a change of beneficiary form to respondent, requesting that the beneficiary on the policy be changed to Caroline Bailey Hinton, who was designated as a friend.

The policy lapsed on March 1, 1977 and again on April 1, 1978, because of non-payment of premiums. In both cases, the policy was reinstated after the "reinstatement premium" was paid. A form requesting reinstatement was filed on July 28, 1978, with the second reinstatement premium. On September 13, 1978, an application to add an income benefit of $125.00 a month for ten years to the policy was submitted by Angela Franks. The addition to the policy was approved on September 19, 1975. On February 1, and August 1, 1979, the policy again lapsed because of non-payment of premiums. Again, the reinstatement premium was paid in each case and the policy was reinstated. There is no evidence that appellant was contacted at the time of any of the four lapses. Except for the form filed in July, 1978, no formal requests for reinstatement accompanied the reinstatement premiums.

All of the forms submitted to the company were purportedly signed by appellant and conveyed to the respondent through its agent, Angela Franks. There was no evidence that respondent had ever directly contacted appellant for any reason or that respondent had ever received any contact from appellant apart from the already mentioned forms which purportedly were signed by him. Appellant testified that he had never purchased insurance from respondent and that his signature on the forms submitted to respondent had been forged. This testimony was confirmed by a handwriting expert.

Appellant's testimony was that Angela Franks and he had known each other since high school, but that the only business relationship he had with her involved the sale of heroin, not insurance. That relationship lasted from 1973 until 1975. According to appellant's testimony, during this period, Franks and her husband supplied heroin which he would sell on the street. The three would then share the profits, half for the Franks and half for appellant. During 1978 and 1979, appellant also participated in drug transactions with Angela Franks' brother, Michael Grady.

On the evening of May 10, 1979, Michael Grady called appellant and requested appellant to meet him at a nearby White Castle Restaurant, or if he was not there, at the "Bailey" house, which was the family home of Caroline Bailey Hinton. Appellant had also known Hinton since high school.

Appellant was with his girlfriend, Kim Ford, at the time, and she accompanied him to the White Castle. Grady was not there, and the two then proceeded to the Bailey house where they were told to wait for Grady. They went back to appellant's car to wait. A few minutes later Michael Grady approached the driver's door. Appellant began speaking to Grady. Then, he noticed that Grady was "looking around." He glanced over toward the passenger side and saw another man, later identified as James Willis, at the passenger door with a gun. Appellant then fled the vehicle, pushing Michael Grady aside in the process. As he ran down the street, he was shot in the back. The bullet severed his spinal cord, leaving most of his body paralyzed.

In paragraph seven of Count I of appellant's amended petition, he alleged that Angela Franks, Caroline Hinton, Michael Grady, and James Willis conspired to kill him, in part at least to obtain the insurance benefits under the policy issued by respondent.

At trial, appellant read portions of the deposition of James Willis into evidence, in which Willis stated that Angela Franks contracted with him and Michael Grady to have appellant killed.

Appellant's counsel also sought to introduce Willis' deposition testimony to the effect that Franks had told him that he and Grady would be paid from the proceeds of an insurance policy. The trial court held the statements to be inadmissible on hearsay grounds.

During the cross-examination of Robert Ebert, respondent's district manager, appellant's counsel named several people and queried Ebert as to whether or not he knew them. Counsel then named several of respondent's departments and asked Ebert to name the remaining departments. At this point, respondent's counsel objected on the grounds of relevancy and materiality. Following a discussion at the bench, the objection was sustained.

Appellant contends that the trial court erred in three respects. First, he contends that the trial court erred in allowing respondent to read into evidence Count II of an indictment against Angela Franks, charging her with conspiracy to commit capital murder, and the verdict of not guilty returned on that charge. Secondly, he argues that the trial court erred in refusing to admit the portion of James Willis' deposition relating to the fact that the money for the murder was to come from the proceeds of a life insurance policy. His final contention is that the trial court erred in sustaining respondent's objection to his cross-examination of Robert Ebert. Respondent argues that even if there was trial court error, the case need not be remanded for a new trial because appellant failed as a matter of law to make a submissible case. Since, where the verdict is for the defendant, there can be no prejudicial error if plaintiff did not make a submissible case, we address this threshold issue before discussing appellant's points.

Respondent argues both that an insurance company cannot be held liable in negligence for an injury which results from the criminal acts of others and that the appellant failed to show a connection between the insurance policy and the attempt on his life. We disagree.

■ The negligent issuance of a life insurance policy is unlikely to lead to an attempt on the insured's life. However, murder is such a serious crime that is against public policy not to discourage any act which even marginally increases the risk that a murder will be attempted. We therefore refuse to hold that an insurance company has no liability if it negligently issues an insurance policy which acts as a incentive for a murder or attempted murder. The increased risk caused by the negligent issuance of life insurance may be slight, but it is certainly foreseeable. Our decision in this regard is in accord with the decisions of other states which have dealt with this issue. *See, Ramey v. Carolina Life Insurance Company*, 244 S.C. 16, 135 S.E.2d 362, 366–367 (1964) and *Liberty National Life Insurance Company v. Weldon*, 267 Ala. 171, 100 So.2d 696, 705–708 (1957).

■ As to whether or not appellant's evidence establishes either that respondent was negligent or that respondent's negligence caused appellant's injury, we hold that appellant's case, while based on circumstantial evidence, was submissible and the issues were for the jury.

The evidence revealed that respondent did not investigate whether or not Caroline Bailey Hinton had an insurable interest in appellant's life and there was evidence that respondent failed to make any direct contacts with appellant. There was also testimony that the agent was required to witness the insured's signing of applications for insurance. Angela Franks knew appellant and therefore she could not have been

duped by an imposter. Therefore, the logical inference is that she witnessed or knew of the forging of the original application for insurance and that she participated in the forgery scheme in order to obtain insurance on appellant's life. James Willis' deposition indicated that he had shot appellant because Franks agreed to pay him for the murder of appellant.

■ Where reasonable minds can draw different conclusions as to whether a party was negligent and whether his acts caused harm to the other party or parties, the decisions on these issues are for a jury. *Rickman v. Sauerwein*, 470 S.W.2d 487, 489 (Mo.1971); *Southwestern Bell Telephone Company v. Bateen*, 688 S.W.2d 61, 62 (Mo.App.1985). Here, reasonable minds could differ as to whether or not any negligence on the part of respondent led to or created incentive for the shooting of appellant. Therefore, the case was submissible.

■ We next address appellant's first point, regarding the admission of Count II of an indictment and verdict indicating that Angela Franks was found not guilty on a charge of conspiring to kill appellant. We begin by noting that appellant failed to properly preserve this issue for review. At trial, appellant objected to the admission of this evidence solely on the basis that the jury's verdict on Count I of the same indictment, which charged Franks with the murder of Reginald McGlorn for the purpose of obtaining the proceeds of another of respondent's policies, was not also being read. The trial court had previously sustained a motion in limine as to any information regarding the McGlorn case. The reading of one count of the indictment and the verdict on that count, without reading the other count and verdict was also the basis of the appellant's claim of error in his motion for a new trial. However in his brief, appellant argues that the evidence of the not guilty verdict was inadmissible because evidence of the verdict or outcome in a criminal trial is inadmissible in a civil case.

■ A party may not interpose one objection at trial and another on appeal. If he does so, he preserves nothing for review. *Negley B. Calvin, Inc. v. Cornet*, 427 S.W.2d 741, 746 (Mo.App.1968). The rule, is that "a trial court will not be convicted of reversible error for admitting inadmissible evidence, even though objected to during trial, if the trial objection is not specific or fails to contain the proper ground for its exclusion." *Bly v. Skaggs Drug Centers*, 562 S.W.2d 723, 726 (Mo.App.1978). *See also, Stafford v. Lyon*, 413 S.W.2d 495, 498 (Mo.1967). Appellant's first point is therefore without merit.

■ We find no merit to appellant's second contention that the trial court erred in sustaining respondent's hearsay objection regarding the deposition testimony of James Willis concerning what Angela Franks had told him. Appellant's theory is that the statements were admissible because they were statement of a co-conspirator.

> The rule is that where a conspiracy is properly shown to exist, the act or declaration of one conspirator in the prosecution of the common scheme, plot or undertaking is the act or declaration of all the conspirators, and thus, *as to them* is not hearsay.

*Byers Brothers Real Estate & Insurance Company, Inc. v. Campbell*, 329 S.W.2d 393, 398 (Mo.App.1959) (emphasis added). However, appellant has failed to cite this court to any case which holds that co-conspirators statements, which would otherwise be hearsay, are admissible against a non-participant in the conspiracy. Here, there was no evidence, either direct or circumstantial, that respondent was involved in a conspiracy to kill appellant or anyone else. If Angela Franks did enter into such a conspiracy, it was outside the scope of her employment as an insurance agent. Therefore, hearsay statements involving what Franks had stated to Willis were properly excluded.

■ Appellant's remaining contention is that the trial court erred in sustaining

respondent's materiality objection to his cross-examination of district manager Robert Ebert. When the materiality of evidence is challenged "it is essential that counsel state what is expected to be proved by the offered evidence so that the court may determine its materiality." *Compton v. Williams Brothers Pipeline Company,* 499 S.W.2d 795, 797 (Mo.1973). "An objection to the exclusion of testimony cannot be considered on appeal absent a showing of what the testimony would have been and that it was relevant and material ..." *Moreland v. State Farm Fire and Casualty Company,* 662 S.W.2d 556, 565 (Mo.App. 1983). Following the objection, appellant's counsel stated at the bench: "On the list that I have obtained from the Secretary of State, there's [sic] 26 either senior vice-presidents or executive vice presidents and only two of them are assigned to individual policy holders that would relate to the [sic] to issuing insurance policies. That's what I hope to establish." Yet, the question objected to was "can you think of any other department [at the insurance company]?" The preceeding questions dealt with whether Ebert recognized the names of specific officers of the company.

The relevancy and materiality of these questions to what appellant's counsel claimed was his point is not clear. Nor is it clear whether Ebert knew or could have testified to the facts that appellant was trying to establish. Also, the number of vice-presidents assigned by respondent to the issuance of individual policies is of questionable materiality to the issue of whether respondent was negligent in its issuance and maintenance of the policy involved here.

The admissibility of evidence of questionable materiality is a matter within the sound discretion of the trial court. *Compton v. Williams Brothers Pipeline Company, supra* at 797. There was no abuse of that discretion. Judgment affirmed.

CRANDALL and KAROHL, JJ., concur.