Eddie CRABB, Plaintiff-Respondent,

v.

MID-AMERICAN DAIRYMEN, INC.,
Defendant-Appellant.

No. 68947.

Supreme Court of Missouri,
En Banc.

July 14, 1987.
Rehearing Denied Sept. 15, 1987.

B.H. Clampett, Springfield, Wayne M. Hoecker, Kansas City, for defendant-appellant.

Michael K. Cully, Gerald H. Lowther, Springfield, for plaintiff-respondent.

BLACKMAR, Judge.

The plaintiff is the proprietor of a pizzeria in Springfield. At one time he was a franchisee of Shakey's, which operates a national chain of owned and franchised pizza parlors. The defendant is a processor of dairy products and a producer of cheese of several varieties. The plaintiff sued the defendant on unrelated claims, as follows: for commissions, or brokerage fees, on sales of cheese to Shakey's and Shakey's franchisees (Count I); and for actual (Count II) and punitive damages (Count III) for fraud and deceit in the sale of allegedly misbranded or adulterated cheese to the plaintiff after he had ceased to operate under a Shakey's franchise. The jury found for plaintiff on all three counts. The trial court entered judgment on the verdict, the court of appeals affirmed, and we granted transfer. Taking the case as an original appeal, we affirm the judgment on Count I but reverse outright on Counts II and III.

### Count I—The Contract Claim

The plaintiff knew that Shakey's was looking for a reliable source of mozzarella cheese. In 1977 he had a discussion with Gene Bass, the defendant's general sales manager, and they agreed that, if the plaintiff could put a program together for the sale of defendant's cheese to Shakey's, defendant would pay him a commission or brokerage fee of 2¢ per pound. The plaintiff made his facilities available for and assisted in experiments in the search for a suitable cheese blend, and sought to promote the defendant's product in the Shakey's organization. He arranged a meeting on April 24, 1980 between Jerry Snyder, who was Shakey's newly-hired purchasing agent, and several representatives of the defendant including its vice president of consumer products.

After the meeting Snyder entered into hard bargaining with defendant. The plaintiff did not participate in subsequent discussions. On May 10, 1980 Shakey's and defendant reached an agreement, with a price lower than the price quoted in April and an oral agreement that Shakey's would receive a rebate of 2¢ per pound on cheese sold to it or its franchisees.

Bass's testimony that he rejected the plaintiff's proposed commission or brokerage arrangement and Snyder's statement that plaintiff was not responsible for his coming to Springfield in April of 1980 make no difference at this stage of the case. There was evidence which the jury apparently believed in support of the plaintiff's contract claim. The defendant recognizes this but challenges the contract claim on a number of grounds.

■ We reject the argument that the terms of the alleged oral contract, calling for a commission "if plaintiff brought Shakey's and defendant together" are too "vague, indefinite and uncertain" to give rise to an enforceable obligation. The phrase "brought together," is a clear and concise description of the kind of services brokers and sales agents customarily render to their clients. Sometimes success comes from comparatively slight effort; sometimes many hours are spent without fruition. The plaintiff testified that he asked for a written brokerage contract and that Bass told him that the defendant operated on the basis of mutual trust rather than through written contracts. There is ample evidence that the plaintiff worked with the defendant in developing cheese and made contact with Shakey's representatives. The jury could find that these efforts culminated in a meeting of representatives of both parties and that an agreement came about as a direct result.

■ It is next argued that the oral contract was one "not to be performed within one year from the making thereof," and so was unenforceable by reason of the statute of frauds, § 432.010, RSMo 1986. The

plaintiff suggests that, for some reason not fully explained in the record, Shakey's could not do business with defendant on behalf of its franchisees until 1979, and so an oral agreement made in 1977 could not be performed within one year. The argument is misdirected. As the defendant later points out, the plaintiff's testimony established an offer for a unilateral contract. That the offer was still open on April 24, 1980 is shown by the defendant's presence at the meeting held on that date. There was no contract with plaintiff until Shakey's actually consummated a purchase pursuant to the agreement of May 10, 1980.

The commission contract, furthermore, was one which could be fully performed within one year following the initial sale. There is no assurance that there would be any repeat orders. Our cases hold, consistently, that a contract is not unenforceable under the statute of frauds if it could possibly be performed in compliance with its terms within one year, even though the actual performance is expected to continue over a much longer period. Thus an oral contract to work for a person for two years would violate the statute, but a parol undertaking to hire a man 30 years old for the rest of his life would not. *Cf. Biest v. Ver Steeg Shoe Co.*, 97 Mo.App. 137, 70 S.W. 1081, 1085 (1902). *See also Koman v. Morrissey*, 517 S.W.2d 929, 935 (Mo.1974); *Kansas City Stock Yards Co. v. A. Reich & Sons, Inc.*, 250 S.W.2d 692, 699 (Mo. 1952); *Want v. Century Supply Co.*, 508 S.W.2d 515, 516 (Mo.App.1974).

The defendant cites *Zupan v. Blumberg*, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957). The case seems to be on all fours, but it simply shows that New York takes a view of the statute of frauds different from the one consistently adhered to by the Missouri courts.

■ The defendant complains of the admission of testimony of the plaintiff's brother, Jack Crabb, over objection as follows:

Q. [By Mr. Lowther] All right. From what Gene Bass told you was there any doubt that Gene Bass was going to see that Eddie got his two cents if he got Mid-Am and Shakey together?

MR. JOYNER: We object, the same objection.

THE COURT: Overruled.

MR. JOYNER: It invades the province of the trier of fact in this case. Calls for a conclusion he is not authorized to make.

THE COURT: Overruled. Go ahead, sir.

A. There was never any question in my mind. I would not have got involved if there had been.

The objection is perhaps well taken, but we perceive no prejudicial error. There is ample testimony in support of the agreement the plaintiff relies on, and so the answer was cumulative. The evidence of course was disputed, but any suggestion that this single question and answer tipped the scales of credibility represents the height of speculation. The law does not guarantee a perfect trial.

The verdict director for Count I reads as follows:

### INSTRUCTION NUMBER 7

Your verdict must be for plaintiff if you believe:

First, defendant agreed to pay plaintiff a commission of two cents (2¢) for each pound of cheese that defendant sold to Shakey's Inc., Shakey's cheese distributors and Shakey's franchisees, and

Second, defendant agreed that if plaintiff brought defendant and Shakey's together, and if, as a result thereof, defendant agreed to sell to Shakey's and Shakey's agreed to buy from defendant, then the two cent (2¢) per pound commission would be payable to plaintiff for so long as defendant sold cheese to Shakey's, and

Third, the agreement was made on behalf of defendant by Gene Bass acting within his apparent authority, and

Fourth, plaintiff rendered full performance to defendant, and

Fifth, defendant has failed to pay any of the said commissions, and

Sixth, plaintiff was thereby damaged.

Acts were within the apparent authority as that term is used in this instruction if:

1. The defendant knowingly permitted Gene Bass to act as General Sales manager, and

2. Plaintiff knew that the defendant knowingly permitted Gene Bass to so act, and

3. The duties of a General Sales Manager in defendant's industry include entering into broker contracts, and

4. Plaintiff, acting reasonably and in good faith, actually believed Gene Bass had the authority to so act, and

5. Plaintiff relied on the authority of Gene Bass, and

6. Plaintiff will be damaged if said acts of Gene Bass are not binding on the defendant.

The defendant suggests numerous faults in this instruction. It is first asserted that the phrase, "brought the defendant together," as found in the second paragraph of the instruction, is no more permissible in an instruction than in a contract, and that words such as "plaintiff produced a purchaser" should have been used. We have rejected the argument as it applies to contract terms. Any remaining uncertainty is effectively clarified by the conjunctive submission in the balance of the paragraph, in which the jury is obliged to find that "as a result thereof, defendant agreed to sell to Shakey's and Shakey's agreed to buy from defendant." Paragraph second as a whole is quite clear and legally correct in defining the plaintiff's burden.

It is suggested that such phrases in the second paragraph as "agreed to sell to Shakey's" and "sold cheese to Shakey's," are faulty, because the plaintiff is claiming damages for all sales to Shakey's franchisees, as well as to Shakey's, Inc. The first paragraph refers to "cheese ... sold to Shakey's, Inc., Shakey's cheese distributors and Shakey's franchisees." Perhaps the plaintiff, in the exercise of care and caution, should have repeated that phrase in the second paragraph,[1] but the jury could reasonably and properly read the word "Shakey's" in the second paragraph as a collective term comprehending the franchisor and its franchisees.

The defendant complains about the phrase, "full performance" in the fourth paragraph of the verdict director, suggesting that it is impermissibly vague and indefinite so as to give the jury the oft-asserted roving commission. It suggests instead, now but not at trial, such language as "did produce a purchaser" (MAI 29.01), or "sold the property as a direct result of plaintiff's efforts" (MAI 29.02, 29.03). The instruction is not erroneous for the reason assigned. Instructions must be read as a whole. The second paragraph describes the performance required of the plaintiff. MAI 16.04 appropriately equates "substantial performance" and "performance". *Beck v. Modern American Life Insurance Co.,* 589 S.W.2d 98, 103 (Mo.App.1979). "Full performance" is no less clear, and can be perfectly understood as referring back to the second paragraph.

■ After complaining that parts of the verdict director were too indefinite and uncertain, the defendant next complains that the definition of "apparent authority" in the verdict director is so prolix and verbose as to violate the norms for not-in-MAI instructions (Rule 70.02(e)), and that it is not an accurate statement of Missouri law. The definition is supported by respectable authority,[2] and is not shown to be inaccurate or misleading. In the absence of an MAI definition, or a specific request by the plaintiff for another definition, we are unwilling to hold that the instruction is erroneous in any respect. The defendant absolutely fails to suggest how the jury could

---

1. The plaintiff commendably pointed out a problem in nomenclature during the instruction conference, but not in the precise terms of the point now asserted. Had the defendant followed up on the suggestion the problem now before us might have been avoided.

2. *See Heshion Motors, Inc. v. Western International Hotels,* 600 S.W.2d 526, 532 (Mo.App. 1980); *Beck v. Modern American Life Insurance Co.,* 589 S.W.2d 98, 103 (Mo.App.1979); 3 Am. Jur.2d *Agency* § 80 (1986).

have been confused or misled by the definition.

The defendant, turning from the specifics, next suggests that Instruction 7 should not have been given at all, asserting that a "not in MAI" instruction was inappropriate under Rule 70.02(b) because MAI 26.01, "Breach of Unilateral Contract" is sufficient to submit the case. We could reject this point without further discussion inasmuch as no objection was made at trial or in the motion for new trial. We conclude, however, that there was no error. The transaction is somewhat more complicated than one involving a simple unilateral contract and does not fit easily into the 26.01 mold. The instruction is similar to one approved in *Beck v. Modern American Life Insurance Co., supra.* MAI cannot include all possible fact situations. Plaintiffs should be allowed some discretion in preparing verdict directors, for which the book can provide no more than a skeleton, so long as the instructions submitted are legally correct.

We will not reverse for instructional error unless prejudice is demonstrated. *Hudson v. Carr,* 668 S.W.2d 68 (Mo. banc 1984). We again remind counsel that one who considers that a proposed instruction may confuse the jury or affect his presentation adversely has the opportunity to suggest modification or to submit alternatives at the instruction conference. Although objection at that time is not necessary to preserve error (Rule 70.03), its absence may be considered in assessing prejudicial effect. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc 1986).[3]

We conclude that Count I gave rise to a factual dispute which was properly submitted to the jury. No error is shown and judgment for $111,010.64 was properly entered on the verdict on that count.

### Counts II and III—The Fraud Claim

In late 1981 Shakey's decided to experiment with a new blend of cheese. The blend initially prepared by the defendant for Shakey's consisted of 80% mozzarella, 10% cheddar, and 10% provolone. The experimental blend was composed of 60% mozzarella, 20% imitation mozzarella cheese substitute,[4] 10% cheddar and 10% provolone. Shakey's instructed the defendant not to make any change in the labeling. The assigned reason was that it wanted reactions uninfluenced by knowledge that a change had been made. There was testimony that the experimental cheese was to be sold only to Shakey's owned pizzerias and to such of its franchisees as chose to participate in the experiment, but there is no evidence that any franchisee was actually notified or offered participation. The experimental cheese was cheaper to produce than the regular blend, and the defendant undertook to rebate approximately ten cents per pound to Shakey's in addition to the two cent per pound rebate initially agreed upon.

Shortly after the experiment was undertaken the plaintiff ceased to be a franchisee of Shakey's, although he continued to use the Shakey's name in connection with his pizzeria until January 13, 1984. He wanted to purchase Shakey's cheese blend from defendant to use in his individual business, and received permission to do so from Shakey's district manager, Loren Johnson. Johnson ordered the cheese for him after he ceased to be a franchisee. The plaintiff had dealt with Rose Armstrong, defendant's associate product manager of cheese, who testified that an agent of Shakey's had confirmed his authority to purchase Shakey's labeled cheese blend after he ceased to be a Shakey's franchisee. He was on a C.O.D. basis, and was required to give a check for each shipment.

In June of that year the defendant delivered three separate 500 pound shipments of the experimental blend to the plaintiff. These appeared on a tabulation furnished in August of 1982 to Shakey's, described as

---

3. We note that the defendant at the instruction conference submitted an alternative to the plaintiff's proposed instruction 12 (relating to punitive damages) and that the plaintiff accepted the alternative. These cooperative efforts of counsel and court are appropriate and helpful.

4. Made from a casing (casein?) base or a soya isolate base.

sales to "Shakey's-Springfield", and 12.75 cents per pound was rebated to Shakey's. The plaintiff was not aware that he was receiving what his counsel referred to as the "fake" cheese because the label had not been changed. He testified that customers had complained that his pizza was not so good as it had been.

The theory of Counts II and III was fraud and deceit. The verdict directing instruction (MAI 23.05) reads as follows:

Your verdict must be for plaintiff if you believe:

First, defendant represented to plaintiff that the cheese was Shakey's 80–10–10 blend intending that plaintiff rely upon such representations in purchasing the cheese, and

Second, the representations were false, and

Third, defendant knew that they were false, and

Fourth, the representations were material to the purchase by plaintiff of the cheese, and

Fifth, plaintiff relied on the representations in making the purchases, and

Sixth, as a direct result of such representations, the plaintiff was damaged.

The jury returned a verdict for $161.25 actual damages on Count II, the total amount claimed in argument, and for $750,-000 punitive damages on Count III. Inasmuch as we conclude that the evidence does not support a recovery on a theory of fraud and deceit there is no need to discuss the propriety or correctness of the punitive damage submission or the amount of the verdict.

There is no substantial evidence of any false representation of fact. The plaintiff points to the failure to change the label, but there is no evidence of what the label actually said as to the ingredients or proportions. Nor is there testimony that any oral representation was made to the plaintiff in connection with his purchases.

The plaintiff cites *Williams v. Miller Pontiac Company*, 409 S.W.2d 275 (Mo. App.1966) for the proposition that a misrepresentation may be made without an express statement. That case involved the rollback of an odometer. It is clearly distinguishable. The odometer is designed to give accurate information about how far an automobile has traveled, and no reason for turning it back other than to deceive potential buyers can be imagined. Insofar as the present record shows, the only purpose of the label was to identify the product as one specified by Shakey's.

The plaintiff's proof is also insufficient to demonstrate that the defendant made any representation for the purpose of inducing reliance by this plaintiff. The blend was changed at the instance of Shakey's, and the label was left the same for Shakey's expressed purposes and at Shakey's explicit direction. There is no evidence that the defendant sought the plaintiff as a customer after he ceased to be a Shakey's franchisee, or that it was trying to market the experimental blend except to the Shakey's organization. The plaintiff, rather, wanted to continue his use of Shakey's specified and labeled cheese blend. His testimony that he would not have made the purchase if he had realized that he would get the experimental cheese is not sufficient to make a case of fraud. He must show that the defendant purposely sought to deceive him. *See* Restatement (Second) of Torts § 531 comment b, illustration 1 (1977).

Plaintiff's counsel argues that, under the evidence, the jury could have found that there was bad blood between the plaintiff and the defendant on account of the transactions which gave rise to Count I and that this circumstance supplied a motive for the defendant to palm the experimental blend off on him. This argument is pure speculation. Nor can a profit motive be attributed to the defendant. It paid the customary rebate to Shakey's for the experimental cheese delivered to the defendant.

The plaintiff argues that the delivery of the wrong cheese on three separate occasions is probative of a purposeful act, and inconsistent with Armstrong's statement that there was a warehouse mistake. In the absence of evidence as to how any one of these orders was communicated to de-

fendant, or how directions were issued to the warehouse, the evidence of a triple error does not provide substantial support for a finding of intent to deceive.

The plaintiff also points to the sign in his establishment advising patrons that he used real cheese. There is no evidence that any representative of the defendant having responsibility for the plaintiff's purchases knew about the sign.

We are not called upon to, and do not, express any conclusion as to the propriety of the transaction between Shakey's and the defendant concerning the experimental cheese or its labeling. Even if we raise a collegial eyebrow, the circumstances are material only insofar as they relate to the plaintiff's claim, which is the modern equivalent of the common law action on the case for fraud and deceit. That action consists of numerous and detailed elements.[5] It is often said that fraud is never presumed but must always be proved, and that difficulty of proof does not dispense with its necessity.[6] Each distinct element must be established by substantial evidence.

The plaintiff cites *Williams v. Miller Pontiac Co.*, 409 S.W.2d 275, 277–78 (Mo. App.1966) for the proposition that practitioners of fraud do not usually operate in the open, and that fraud cases must often be established by circumstantial evidence. We of course are obliged to take the plaintiff's evidence as true, to give the plaintiff the benefit of all reasonable inferences, and to disregard testimony adduced by the defendant except insofar as it aids the plaintiff's case. We conclude that, tested by these standards, the plaintiff still has failed to establish that there was a misrepresentation of fact, and that the defendant sought to induce the plaintiff to rely on any representation it made.

We do not have to decide whether the plaintiff could have employed any other legal theory to recover his actual damages for delivery of the wrong cheese. He chose the theory of fraud and deceit and made no alternate submission. There is no need to give him a further opportunity to recover the very modest amount of actual damages he claims. It is better to bring the litigation to an end.

The judgment as to Count I is affirmed. The judgment as to Counts II and III is reversed. The case is remanded for entry of a revised judgment in compliance with this opinion.

BILLINGS, C.J., and DONNELLY, WELLIVER, ROBERTSON and HIGGINS, JJ., concur.

RENDLEN, J., concurs in result.

---

**5.** *Bayer v. American Mutual Casualty Co.*, 359 S.W.2d 748, 752 (Mo.1962) lists eight essential elements; *Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo. banc 1983) lists these elements and adds damage as a ninth. Cases such as these furnish the basis for MAI 23.05, which telescopes the elements into six propositions.

**6.** *See, e.g., Schnuck v. Kriegshauser*, 371 S.W.2d 242, 248 (Mo.1963); *Lowther v. Hays*, 225 S.W.2d 708 (Mo.1950).