Steve **SHARAGA**, Respondent,

v.

**AUTO OWNERS MUTUAL INSURANCE COMPANY**, Appellant.

**WD 42909.**

Missouri Court of Appeals,
Western District.

May 5, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 30, 1992.

Roy F. Walters, Kansas City, Mo., for appellant.

John H. Lake, Jefferson City, Mo., for respondent.

Before BRECKENRIDGE, P.J., and BERREY and FENNER, JJ.

PER CURIAM.

Auto Owners Mutual Insurance Company (Auto Owners), appeals from a judgment in favor of Steve Sharaga for $19,810 based upon his claim on a fire insurance policy and the trial court's award of interest on the damage award. The case comes now to this writer upon reassignment within division. This review occurs in light of this court's grant of Mr. Sharaga's motion for rehearing. The judgment is affirmed.

This case arises from Mr. Sharaga's claim against his insurer for fire damage to his house in 1986.

On July 15, 1986, Mr. Sharaga purchased a six-month homeowner's insurance policy for his house from Auto Owners. The policy included $31,500 in dwelling coverage and $15,750 in personal property coverage. It also included a clause voiding the entire policy if the insured "intentionally concealed or misrepresented any material fact or circumstances relating to this insurance" and a clause subrogating to it all rights of a mortgagee when the insurer chose to pay a mortgagee for loss but refused to pay the mortgagor's claim.

In 1983, Mr. Sharaga put his house up for sale. In January, 1986, while seeking refinancing, he obtained a professional appraisal of his still unsold house. It was

appraised at $38,600. He listed the selling price at $37,000. The house remained for sale at the time of the fire.

Sometime near Christmas, 1986, Mr. Sharaga and his roommate, Paul Kavan, moved from Mr. Sharaga's house in Lake Ozark to Mr. Sharaga's parents' house, about three miles away. Mr. Sharaga and Mr. Kavan planned to "house sit" for the elder Sharagas while they were on vacation. Mr. Sharaga testified that he returned to his house sometime around December 28 or 29 to retrieve his clothes and other things he needed for his stay at his parents'.

On the evening of December 29, Mr. Sharaga visited several bars, ending at the bar where Mr. Kavan worked as a bartender. According to both men, Mr. Sharaga left the bar at 1:00 a.m., the morning of December 30.

The record shows that local fire fighters received a report of the Sharaga fire at 1:16 a.m. on December 30 and had it under control by 1:30 a.m. The department's fire report made no reference to an incendiary or arsonous nature of the fire. The evidence, including photographs, showed that the house suffered extensive damage.

On December 31, Ken Johnson, a fire insurance investigator for Auto Owners, conducted a survey of Mr. Sharaga's house; on January 7, 1987, he conducted a second survey. His surveys included photographing the condition of the house and its contents. He found the charred remains of cans containing flammable liquids. He concluded that the heat and fire damage appeared worst in the utility room and the spare bedroom where Mr. Kavan had stayed. Mr. Johnson testified that, based upon his surveys and his conversations with Mr. Sharaga, he believed that liquid accelerant poured on the floor in those rooms had started the fire. An analytical chemist who examined samples of debris collected by Mr. Johnson testified that the samples showed traces of accelerant.

On January 10, Mark Holt, a member of the local fire department and an employee of a maintenance company, inspected Mr. Sharaga's house and removed some things his company intended to salvage and clean for Mr. Sharaga. He testified that he told Mr. Sharaga his company could repair the house for $15,146.50.

Mr. Sharaga testified without objection that he also received an estimate from Mike Quick, "a business acquaintance," of $17,296 to repair the house. He also testified without objection that he estimated the cost of replacement of the contents of his house at about $16,000, and added that amount to Mr. Quick's estimate when he submitted his claim for $34,554.32 to Auto Owners in a formal proof of loss. In that document, he stated that he did not know the origin of the fire.

Mr. Sharaga later spoke with a representative of Auto Owners, as well as with investigator Johnson. In a letter dated May 14, 1987, Auto Owners rejected Mr. Sharaga's proof of loss, stating that he had committed a breach of the insurance policy by committing fraud and false swearing.

At trial, evidence showed that at the time of the fire, Mr. Sharaga had serious financial problems, earning relatively little as a bartender and owing a relatively large amount to a variety of creditors. The trial court admitted evidence that Mr. Sharaga had formally complained about Auto Owners to the state's division of insurance that Auto Owners had not given notice of its disposition of his claim. In addition, the court admitted evidence that the local fire department had made no report of arson regarding the fire. Although the court at least once prevented Mr. Johnson from testifying to the cause of the fire, it eventually did permit him to testify that accelerant started the fire.

The court further allowed a real estate appraiser to testify, over defendant's objection, that she had appraised Mr. Sharaga's house in January, 1986. Although she testified that the bank appraisal form bore her signature, the court would not permit her to read from it the appraised value of Mr. Sharaga's house, ruling that no foundation had been established for the evidence as a business record. The court permitted Mr. Sharaga to give his opinion as to the value

of his house before the fire, $37,000, but would not permit him to testify to the actual appraised amount. Mr. Sharaga testified at trial, again over objection, that after the fire he sold the unrepaired house for "nine or ten thousand dollars."

The jury returned a verdict in favor of Mr. Sharaga, awarding him $28,600 for damages to his house and $7,500 for damages to personal property. The court subtracted from the total of $36,100 the sum of $16,290 that Auto Owners had paid to the mortgagee, credited Auto Owners with the policy deductible and awarded Mr. Sharaga $19,810 in total damages plus interest from April 10, 1987, and costs.

Auto Owners bifurcates its first point on appeal, arguing that Mr. Sharaga failed to make a submissible case on the proper measure of damages first to his personal property and second to his real property. The first issue addressed in considering this point will be the question concerning the real property. This issue is reviewed to determine whether substantial evidence supported the verdict. *Wood River Pipeline Co. v. Sommer*, 757 S.W.2d 265, 268 (Mo.App.1988). A reviewing court must view the evidence and all reasonable inferences drawn from it in the light most favorable to the plaintiff. *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 504 (Mo.1986).

■ Generally, in cases involving partial loss of both real and personal property, damages are measured by the difference between the reasonable values of the property immediately before and immediately after the casualty. *Wells v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207, 210 (Mo. banc 1983). In cases of partial loss, the burden is on the insured to prove the value of the property both before and after the casualty. *Id.* at 211.

■ An exception to the diminution in value measure of damages for damage to real or personal property is the cost of repair test. *Tull v. Housing Authority of City of Columbia*, 691 S.W.2d 940, 942 (Mo.App.1985). The cost of repair is competent evidence to be considered when property can be restored to its former condition at a cost less than diminution of value. *Id.* However, the cost of repair is not proper as the measure of damages unless the damage is comparatively insignificant considering total value. *Id.*

■ Here, as instructed, the jury applied the diminution-in-value test, subtracting the amount for which Mr. Sharaga claimed as the after-fire value of his house from the value he placed on the house as of January, 1986. The proper test was applied because the cost of repairs, estimated at more than $17,000, amounted to nearly fifty-five percent of the insured value of the house. At fifty-five percent, the repair was not comparatively insignificant considering total value.

In addressing the question presented by this portion of Auto Owners' Point I, Point VII is also necessarily addressed as it raises the issue of whether Mr. Sharaga's testimony as to his opinion of the value of the building was properly allowed into evidence by the trial court.

■ The general rule in Missouri is that an owner is presumed competent to testify to the value of his real property even though he does not qualify as an expert. *Schulze v. C & H Builders*, 761 S.W.2d 219, 223 (Mo.App.1988). In this case, Mr. Sharaga based his opinion as to the property's pre-fire value upon uncontradicted evidence of the price he paid in 1979 for the house, the improvements that he had made in the house and the cost of those improvements. This opinion constitutes substantial evidence to support the approximately $38,000 the jury used in evaluating the house before the fire.

■ Moreover, § 379.140 prohibits insurers from disclaiming as its value at least the insured value of either real or personal property. *DeWitt v. American Family Mutual Ins. Co.*, 667 S.W.2d 700, 708 (Mo. banc 1984). Here, Auto Owners had insured Mr. Sharaga's house for $31,500. That, at least, must serve as a starting point for any measure of damages, and the jury could have accepted Mr. Sharaga's

evidence and increased that value. *Id.* at 709.

■ Auto Owners further complains that Mr. Sharaga laid no foundation for his testimony of the value of the house after the fire. Mr. Sharaga testified, without challenge, that in his opinion the post-fire value of the house equaled the price at which he sold the lot and the unrepaired house, "nine or ten thousand dollars." Mr. Sharaga's unchallenged testimony tended to show that the market price for his damaged house approximated "nine or ten thousand dollars." In addition, the jury saw photos of the partially destroyed house and heard a complete description of the damage it suffered.

The record does not rebut the presumption of Mr. Sharaga's competence to testify to the value of his property after the fire.

■ Auto Owners contends further under Point I that the trial court erred in overruling its motion for a new trial because Mr. Sharaga failed to make a submissible case on the proper measure of damages for his personal property loss. Auto Owners further contends that Instruction No. 9 improperly applied the same measure of damages to losses of real and personal property.

As stated previously herein, diminution-in-value generally serves as the measure of damages where loss occurs to personal as well as to real property. *Wells v. Missouri Property Insurance Placement Facility,* 653 S.W.2d at 210. Auto Owners contends that Mr. Sharaga failed to meet the "burden of proving the value of his personal property at the time of loss ..." Auto Owners claims that Mr. Sharaga's only evidence as to the value of his personal property was his proof of loss listing original and replacement costs and that the replacement cost of an item cannot be substituted for the fair market value of that item.

■ Fair market value refers to the price the property would bring if sold by a willing seller to a willing buyer who is under no compulsion to buy. *Larabee v. City of Kansas City,* 697 S.W.2d 177, 182 (Mo.App.1985). Mr. Sharaga's listed costs,

original and replacement, are not the figures of fair market value. They are, however, adequate to support the jury's award when considered in addition to the other evidence of value adduced at trial.

An owner is presumed competent to testify as to the reasonable value of his personal property prior to its damage or destruction without further qualification. *DeWitt v. American Family Mutual Insurance Company,* 667 S.W.2d at 708. In his testimony, Mr. Sharaga adopted the proof-of-loss values he assigned to the damaged property, values he arrived at with the help of his father who had experience in the salvaging of fire damaged appliances.

In *DeWitt,* the plaintiff could not articulate a market value for her personal property, destroyed by fire. Her evidence of value consisted of her own testimony, testimony of the insurance company's adjuster, and a personal property inventory booklet prepared after her loss and submitted to the company to support her claim. *DeWitt,* 667 S.W.2d at 708. The court, in rejecting an argument made by the defendant that said evidence did not constitute substantial evidence, stated:

> Defendant's argument ignores the significance of the remainder of plaintiff's testimony. After the above quoted exchange, plaintiff testified, item by item, her opinion of the fair market value of the contents of the dwelling. Specifically, the plaintiff stated what was in her home, each item's original cost, the condition of each item at the time of loss, and what it would cost to replace it. Viewing the evidence in a light most favorable to plaintiff, we conclude that her initial response merely indicated she was unable to give a truthful aggregate figure for all such property in the house. However, when each piece of property was considered separately she was able to establish its value.

*Id.* at 709 (footnote omitted).

Mr. Sharaga's evidence established the original cost of the items, the age of the items and the replacement cost of the items. The value of the property after the

fire, viewed in the light most favorable to the verdict, would be ascertainable by the jury from this information. Mr. Sharaga testified to the destruction of the property listed on the inventory. His father labelled the damage done as "devastating." The issue of whether or not these items were destroyed is one for the jury. *Berry v. Federal Kemper Ins. Co.*, 621 S.W.2d 948, 952 (Mo.App.1981).

This evidence, in addition to the photographs shown to the jury and the testimony of Ken Johnson, constitutes substantial evidence to support the award. Mr. Johnson, an experienced insurance investigator, testified that his initial estimate of the personal property loss, taken from the form he filled out and sent Auto Owners, was approximately $10,000, a figure well above the $7,500 awarded by the jury. Photographs of sections of the damaged house were also in evidence. The record contains substantial evidence to support Mr. Sharaga's claim for loss of personal property.

Point I is denied.

In Point II, Auto Owners claims that the trial court erred in adding interest to the jury award where Mr. Sharaga had not submitted the issue of his entitlement to interest to the jury for determination and further because the amount of damages to which interest would apply were in dispute.

■■■■ Interest cannot be awarded as part of damages if the basis damages are unliquidated. *Boatmen's Bank of Butler v. Berwald*, 752 S.W.2d 829, 835 (Mo.App. 1988). However, where a defendant contests only the issue of liability the plaintiff's claim is considered liquidated even though the amount of ultimate liability remains to be determined. *Ohlendorf v. Feinstein*, 670 S.W.2d 930, 935 (Mo.App. 1984). Furthermore, where the amount to be recovered is not disputed and interest depends merely upon mathematical computation the rights of the parties are not prejudiced by the court, rather than the jury, performing the mathematical process of computing interest. *Hamra v. Boone County Development Company*, 602 S.W.2d 721, 726–727 (Mo.App.1980) citing

*Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148, 1154–1155 (1936).

■■■ Auto Owners fails to reference any portion of the record to show a bona fide challenge to the amount of damages. The record reflects that the only substantive defense by Auto Owners was that Mr. Sharaga intentionally set the fire for which he was claiming damages. The jury found against Auto Owners on this question.

The trial court did not err in allowing Mr. Sharaga prejudgment interest under the circumstances herein.

Point II is denied.

■■■ In Point III, Auto Owners contends that the trial court erred in giving Instruction No. 9, a deviation from MAI 4.02, because that instruction improperly instructs the jury on the proper measure of damages as to both the real and personal property and contains language only applicable in eminent domain cases. Initially, it is noted that there was no objection to the complained of portion of the instruction at trial. Secondly, as demonstrated in Point I, supra, the proper measure of damages was set out in Instruction No. 9. The relevant portion of the complained of instruction reads as follows:

> In determining fair market value you should take into consideration all the uses to which the property may be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future.

■■■ Instructional error is not reversible unless prejudice is demonstrated. *Crabb v. Mid–American Dairymen, Inc.*, 735 S.W.2d 714, 718 (Mo. banc 1987). Counsel is reminded that one who considered that a proposed instruction may confuse the jury or affect his presentation adversely had the opportunity to suggest modification or to submit alternatives at the instruction conference. *Id.* "Although objection at that time is not necessary to preserve error (Rule 70.03), its absence may be considered in assessing prejudicial effect." *Id.* (citation omitted).

Permitting jurors to speculate over uses of property when they should limit their consideration poses an impermissible threat of prejudice, but here the evidence reveals nothing of significance with respect to other uses for Mr. Sharaga's house and lot other than residential use. Accordingly, Auto Owners suffered no prejudice in that regard. Nor can any prejudice be detected in the application of Instruction No. 9 to any loss Mr. Sharaga suffered with respect to personal property.

Point III is denied.

In Point IV, Auto Owners claims that the trial court improperly precluded expert Ken Johnson from testifying as to the nature, cause and origin of the Sharaga fire because such testimony was material and relevant. Auto Owners points out that Mr. Johnson was precluded from testifying that accelerant was poured at the point of origin; what happens when accelerant is poured on tile; how the fire originated; and who, in his opinion, was responsible for setting the fire. In a defense offer of proof, Mr. Johnson offered his opinion that the fire was intentionally set and named the person he thought responsible for setting the fire. The trial court sustained the offer of proof. Mr. Johnson was later allowed to testify as to the cause of the fire.

It was not error for the trial court to disallow Mr. Johnson's testimony as to who, in his opinion, set the fire. The admission or exclusion of expert testimony is a matter usually left to the sound discretion of the trial court. *Superior Ice & Coal Co. v. Belger Cartage Serv., Inc.*, 337 S.W.2d 897, 906 (Mo.1960). An appellate court will interfere with the trial court's decision only where that discretion has been abused. *Id.* Testimony on the origin or cause of a fire is allowable if such testimony is relevant and relates to issues not within the jury's common understanding. *State v. Letcher*, 772 S.W.2d 795, 798 (Mo.App.1989). However, in the case at bar, Mr. Johnson's opinion as to who set the fire was not a matter of expertise. It was rather a matter of his personal opinion which invaded the special province of the jury. *See Rodefer v. Grange Mut.*

*Ins. Co.*, 91 S.W.2d 112, 113 (Mo.App.1936); *Fair Mercantile Co. v. St. Paul Fire & Marine Ins. Co.*, 175 S.W.2d 930, 936 (Mo. App.1943). In *Fair Mercantile*, a distinction is drawn between allowable testimony as to incendiary origin and testimony that includes "the question of human conduct along with the criminal intent of a particular person." *Id.*

Point IV is denied.

In Point V, Auto Owners argues that the trial court erred in admitting testimony on the source of the fire given by a fire fighter, Charles Brown, who participated in fighting the fire. Auto Owners argues that the court erred in permitting Mr. Brown to testify because Mr. Sharaga had failed properly to list him as an expert and to lay a foundation for his testimony regarding the fire's cause. Auto Owners further argued that Mr. Brown's testimony proved irrelevant and immaterial.

The record shows that Mr. Sharaga did not call Mr. Brown as an expert witness, but rather as a participant in the events from which the action arose. The rules regarding the identification of expert witnesses do not apply when a witness who participated in an event incidentally brings knowledge and expertise to the stand. *Owen v. City of Springfield*, 741 S.W.2d 16, 20 (Mo. banc 1987); cert. denied, 108 S.Ct. 1576 (1988). Moreover, Auto Owners can claim no surprise since its agent knew Mr. Brown's identity and role in the event soon after the fire and long before the trial. *Turner v. Fuqua Homes, Inc.*, 742 S.W.2d 603, 611 (Mo.App.1987).

Finally, Mr. Brown merely stated that he would have noted an arsonous origin to a fire on his report. By not reporting an incendiary origin, he did not deem the fire arson. He merely explained the procedure that he, as fire captain, used in filling out a public document. The trial court did not abuse its broad discretion in admitting this evidence, nor did its admission prejudice Auto Owners.

Point V is denied.

In Point VI, Auto Owners contends that the trial court erred in admitting evidence that Mr. Sharaga had complained to the state division of insurance because the company refused to pay his claim. Although at one point, Mr. Sharaga had made a claim for vexatious delay, that claim had been struck from his petition at the time of trial. The testimony at issue occurred in the context of a chronology of events leading up to Auto Owner's denial of Mr. Sharaga's claim. Mr. Sharaga testified:

Q. So after you weren't receiving any payments and you're getting no response did you make any kind of complaints to anyone?

A. After my meeting with Mr. Johnson in Springfield and nothing had happened yet, I still hadn't received the letter of denial, I had gone to the Division of Insurance.

MR. WALTERS: Object. At this point in time irrelevant and immaterial.

THE COURT: Overruled.

(By Mr. Lake)

Q. And did you make some kind of complaint to the Division of Insurance?

A. Yes, I did. The fact that it had been such a period of time and had received no word as to the disposition of my claim and—

Q. After that did you hear from Auto Owners?

A. Yes, I did.

Q. Hand you what's marked Plaintiff's Exhibit Number 12. Ask if you can identify that?

A. The letter from Auto Owners denying me the rights to my claim.

■ Auto Owners claims that the above testimony was irrelevant as it did not tend to prove or disprove a fact in issue. *McIlroy v. Hamilton*, 539 S.W.2d 669 (Mo. App.1976). The determination of relevancy is often subjective; a trial court is accorded broad discretion in ruling on questions of admissibility. *Lawson v. Schumacher & Blum Chevrolet, Inc.*, 687 S.W.2d 947, 951 (Mo.App.1985). The ruling of the trial court will not be disturbed absent a showing of an abuse of discretion. *Id.* Additionally, it is far from certain that the general objection made by Auto Owners preserved anything for review. Auto Owners did not explain why the information sought was irrelevant leaving nothing to review. *See Gilliam v. City of St. Louis,* 766 S.W.2d 172, 174 (Mo.App.1989); *Williams v. John Hancock Mut. Life Ins. Co.,* 718 S.W.2d 611, 614 (Mo.App.1986).

■ Assuming *arguendo* that the objection properly preserved the issue for review, Auto Owners cannot show how the admission of the testimony was prejudicial beyond its assertion that the evidence somehow distracted the jury. Rule 84.13(b) provides that "[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Auto Owners does not make the necessary showing. In fact, counsel for Auto Owners questioned witness Richard Hart, manager of Auto Owners' claims office at Oskaloosa, Iowa, as to whether he had received a letter from the insurance department and what had been done with the letter. If the effect of such testimony had been as prejudicial to Auto Owners as it claims, it would not have questioned its witness in this manner.

Point VI is denied.

The judgment of the trial court is affirmed.

All concur.